LABORDE, Judge.
Plaintiff-appellant has perfected this appeal from an adverse judgment in the trial court.
We adopt the well written statement of fact and findings of law outlined by the distinguished trial judge in his reasons for judgment:
Plaintiff filed this suit on December 28, 1977, individually and as administrator of the estate of his minor son, against State Farm Mutual Automobile Ins. Co. to recover damages for an injury which his son suffered as a result of the alleged negligence of one Franklin Vidrine owner and operator of a school bus employed by the Evangeline Parish School Board. Defendant State Farm Mutual Automobile Insurance Company (actually State Farm Fire and Casualty Company) hereinafter referred to as “State Farm”, is the insurance carrier of Franklin Vidrine through the Evangeline Parish School Board.
Plaintiff thereafter on April 20, 1978, by First Supplemental and Amending Petition, made (1) Superior Coaches, Inc., (2) Sheller Globe Corporation, and (3) Superior Coach Sales, Inc., defendants alleging that these defendants were negligent in failing to properly design and construct the body of the school bus, and further alleging that the injury suffered by Bryan Lafleur was cause wholly or in part by said negligence.
Superior Coach Sales, Inc. filed on August 28, 1978, a Motion for summary judgment which the court granted on October 6, 1978.
Answer by defendants Sheller Globe Corporation and Superior Coach, Inc. was filed on August 23, 1978. They also filed an amending answer on March 20, 1979, alleging particularly the negligence and contributory negligence of Bryan Lafl-eur.
State Farm answered plaintiff’s first supplemental and amending Petition in Tort and made a Third Party Demand against Sheller Globe Corporation and Superior Coach, Inc. The latter Third Party Defendants filed their answer thereto and made a Third Party demand against State Farm. State Farm filed its answer to this demand.
The accident and resultant injuries occurred on May 13, 1977, when Bryan Lafleur sought to exit from a school bus in which he was a passenger and his left wrist became caught in the school bus door “V”, that is, between that portion of the bus door which opens outwards and the pillar to which it is attached. This door has a so-called “piano hinge” which is a continuous hinge from the floor to a point 52 inches above the floor. The remainder of the door from the 52 inches to the top of the door frame has no hinge but is slightly angled for about 2% feet so that when it is open there is a space called a “V” space. It is in this “V” that Bryan Lafleur’s left wrist came somehow to rest and causing serious injury thereto.
There are three issues presented to the court for determination:
1. Was Franklin Vidrine negligent, and was his negligence the proximate cause of the accident as alleged in Article 12 of plaintiff’s petition?
2. Were Superior Coaches, Inc., and Sheller Globe Corporation negligent by failing to properly design and construct the body of the school bus so as to make it safe during its normal use and operation?
*566 3. Was Bryan Lafleur contributorily negligent?
At the time of the accident, Bryan Lafleur, was a little over twelve years of age, and was disembarking from the school bus owned and operated by Franklin Vidrine. As the bus approached the place where Bryan Lafleur was to get off the bus, he arose from the place where he had been sitting, which was on the right hand side of the bus about midway down the aisle from the front of the bus, and made his way to the exit. These are two steps which lead from the floor of the bus to the exit which is composed of a door one side of which opens inwards and the other which opens outwards. There is a bar at the head of the steps which goes from the floor to the ceiling of the bus, and whose purpose it is to provide support for passengers about to disembark from the bus. From this bar another bar leads off at right angle thereto about 3 feet from the floor, and which is also used by passengers to support themselves when descending the steps to get off the bus.
From the testimony it appears that Bryan Lafleur grabbed hold of the upright bar and swung his body down to the first step, missing the second or intermediate step altogether, and while so doing his left wrist got caught in the “V” of the open door and he sustained rather serious injuries to the left wrist and left hand.
He was taken to the Ville Platte General Hospital where he was treated by Dr. Charles J. Aswell, a physician and surgeon of Ville Platte, who cleaned and sutured the wound. Healing proceeded in a normal manner but the hand took on a claw-like appearance. About 4 months later Bryan had to be hospitalized and operated on at the Lafayette General Hospital by Dr. Stephen I. Goldware, a neuro-surgeon, to correct this condition. He made an uneventful recovery and his hand is fortunately normal for all practical purposes, although he will have a slight permanent residual disability of the hand. He has about 70% of the muscle strength in the hand, and the range of motion is normal, and has good apposition, good movement of the thumb. Taken all in all his left hand is just about normal although Dr. Goldware says the boy probably should not aspire to be a neurosurgeon, and would have difficulty being a watch maker. In short, he would have difficulty in performing fine or delicate motions or movements. Fortunately he is right handed, and it was the left hand which was injured. The boy did suffer much pain and discomfort for a long period of time.
Lisa McDaniel who was sitting next to Bryan testified, but she did not see the accident. She did say however that the bus was moving at the time she saw Bryan near the door of the bus, but did not see him descend from the bus.
Franklin Vidrine, the operator of the bus testified categorically that:
1. The bus was stopped when Bryan exited the bus,
2. That the door of the bus was open, and
3. There had been no change in the door since he became the owner of the bus several years before the accident.
Two experts testified, Mr. Paul M. Hale for the plaintiff and Mr. John Ho-nert for defendants. There is great conflict in their testimony.
Without going into an exhaustive review of the evidence the court finds that Franklin Vidrine was not negligent in the operation of his bus at the time of the accident. The court further finds that the school bus he owned and operated was free of defect in design or construction, and consequently he was free of negligence in operating the bus.
The court also finds that defendants Sheller Globe Corporation and Superior Coach, Inc. were not guilty of any negligence in the design or construction of the bus owned and operated by Franklin Vid-rine.
It is the law of this state that public carriers of passengers, such as school buses, are required to exercise the highest degree of care, and when passengers are *567 injured as a result of an accident the burden is on the carrier to show that it was free of negligence. However, a public carrier is not the insurer of their safety-
The court has carefully reviewed the pleadings, testimony, deposition of Dr. Goldware, the briefs, and the applicable law and jurisprudence, and finds that plaintiff has failed to prove his case against any of the three defendants herein by a preponderance of the evidence as required by law, and further finds that Bryan Lafleur was contributorily negligent in exiting from the bus, and that this negligence was the proximate cause of the accident and resultant injuries, and, therefore, the demands of the plaintiff against the three defendants herein will be dismissed at his costs.
The third party demand by State Farm against defendants Sheller Globe Corporation and Superior Coach will be dismissed, as will their third party demand against State Farm.
As errors of the trial court, plaintiff-appellant assigns the following:
1. THE TRIAL COURT MANIFESTLY ERRED IN RULING THAT STATE FARM WAS NOT LIABLE TO PLAINTIFF FOR THE ACCIDENT SUSTAINED, AND THE INJURIES SUFFERED, BY BRYAN LAFL-EUR;
2. THE TRIAL COURT MANIFESTLY ERRED IN RULING THAT SHELLER AND SUPERIOR WERE NOT LIABLE TO PLAINTIFF FOR THE ACCIDENT SUSTAINED, AND THE INJURIES SUFFERED, BY BRYAN LAFLEUR:
3. THE TRIAL COURT MANIFESTLY ERRED IN FINDING THAT BRYAN LAFLEUR WAS CONTRIBUTORY NEGLIGENT.
The standard of review in a factual dispute such as the one before us was explained in Canter v. Koehring, 283 So.2d 716 (La.1973):
“When there is evidence before the trier of facts which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of facts; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.”
In Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), the Supreme Court defined manifestly erroneous as meaning clearly wrong.
Our careful review of the record does not reveal that the trial judge’s factual determination was manifestly erroneous.
Plaintiff-appellant argues that the duty owed to him is so strict that once a passenger shows injury and his failure to safely reach his destination, a prima facie case of liability is established as against the carrier, and the carrier then bears the burden of exonerating itself by convincingly proving that he was free from any negligence, or that the bus was free from any defects, which caused or contributed to the accident from which plaintiff suffers or suffered. LSA-C.C. Article 2316 and numerous cases are cited by plaintiff-appellant in support of his argument.
While we agree that the cases cited fully support that principle of law, it is clear that the trial court correctly concluded that the defendants had convincingly overcome the prima facie case of negligence and had exonerated themselves from negligence.
*568 For the above and foregoing reasons, the judgment of the trial judge is affirmed. All costs of this appeal are taxed to the plaintiff-appellant.

AFFIRMED.